Case number 221188, Jonathan David Hewitt-El v. Michael Burgess, Warden. Argument not to exceed 15 minutes per side. Mr. Shimkus, you may proceed for the appellant. Morning. Morning, Your Honors. May it please this Court, Scott Shimkus appearing on behalf of Respondent Michael Burgess. Your Honors, in granting habeas relief in this case, the District Court concluded that not one fair-minded jurist could agree with what the Michigan Court of Appeals decided on the ineffective assistance claims presented. The District Court reached that conclusion despite years-long litigation and differing opinions between the Michigan Court of Appeals, the Michigan Supreme Court, and the Trial Court. So we ask this Court to reverse for two specific reasons. First, because these claims, the ineffective assistance claims, are procedurally defaulted and the default cannot be excused. And second, on the merits of the issues, fair-minded jurists could disagree on whether Hewitt-El could show actual prejudice for both of his ineffective assistance claims, given the victim's unwavering and immediate identifications of Hewitt-El and Hewitt-El's admissions that he knew the victim and had spoken with him on that. Does he need actual prejudice on both claims? Or if indeed there is ineffective assistance on either one of them, then prejudice from that alone would be enough, wouldn't it? On a single claim, yes, that's correct, Your Honor. He has two strings that he's attacking. Ideally, he'd like both, but one would suffice if you got enough prejudice from one. That's correct, Your Honor. Yes, absolutely. But our position is certainly that really the easier route here to decide this case is prejudice on both claims, not necessarily performance. As Your Honors, I'm sure I said. Well, I mean, you agree that performance, I mean, was deficient as to telling the jury that his guy's got five armed robbery convictions in an armed robbery trial. You would concede that, wouldn't you? I thought you already had conceded it. I'm not sure if I was as explicit in my brief, but I think it makes sense that we're not pushing back on that conclusion from the Michigan Court of Appeals. So you're not disputing it? Yes, I think that's right. You want to admit it, but you're not disputing it. I think that's right, Your Honor. But I also think that that's not fatal here, because there's still prejudice to contend with. I almost said the defendant, the petitioner in this case, still has to overcome that prejudice. And even besides both of those issues, there's still a procedural default on both claims. Well, on that score, I mean, obviously, it's not preserved at the trial level. And then the Michigan Court of Appeals says that Rust abandoned it in his brief. So if appellate counsel fails to make that argument in a manner where the Michigan Court of Appeals thinks it's presented to them, an argument of that nature, I mean, that would seem to be pretty clearly itself ineffective assistance by the appellate counsel, which would excuse the default. Do you disagree with any of that? Yes, but more so a clarification, Your Honor. Just so you know, I think what he's asking you is, why are you bothering us with procedural default? Doesn't it just take you back to the underlying prejudice question? I think that's not quite correct, Your Honor, because as far as the performance aspect of appellate counsel's, well, I suppose the performance here, is he presented claims. They were not straightforward, ineffective assistance claims. That's certainly true. But as I outlined in my brief, the claims he did present forced the Court of Appeals to still grapple with the issues here. My question is, I mean, are you disputing that he has cause for overcoming the default before we go down some other road? Absolutely, Your Honor. So we get by this default business as to letting in the prior convictions? No, Your Honor. We certainly assert that he does not meet the cause requirement. Okay, well, maybe you were trying to explain it. But how, I mean, it's a totally obvious argument. It's very likely a meritorious argument on direct appeal. And Russ doesn't make, and the Michigan Court of Appeals says it's abandoned because Russ doesn't develop the argument adequately in his brief. So what part of ineffective assistance at the appellate level are you contending is not satisfied here? Both prongs, Your Honor, the deficient performance and the actual. How is it not deficient, what I just described? What am I misunderstanding? So the way that appellate counsel presented the issue on direct appeal was sort of two avenues of ineffective assistance. He asserted that it was ineffective for counsel to present the claims under MRE 609, but the second part of his argument was that the defense counsel, the trial counsel, should have requested a jury instruction, a limiting instruction on those prior convictions. And so the first issue, the Michigan Court of Appeals certainly said that was abandoned for essentially failure. The 609 issue. Correct. That's probably a winner if he presents it well. I mean, really, come on. The boundary test for that, an armed robbery trial, the question whether five priors, armed robbery, is more prejudicial than the probative value as to his truthfulness. I mean, the trial judge himself, you know, he was apoplectic that the motion wasn't presented to him. And I think that would speak to this. Can I just pause on this one? How often does it happen when you testify that these things come in? Doesn't that change the equation a little bit? Not necessarily, Your Honor. The back door opening that happens? That's true. But, again, that goes to the deficient performance aspect here. And, Judge Hathaway, it goes to your question as well. Those issues, whether it was wrong for counsel to introduce the convictions, that's a deficient performance question. But even on direct appeal, if it had been presented as a straightforward ineffective assistance claim, not abandoned, it was properly briefed, just as it was on the 6500 motion, the Michigan Court of Appeals still has to deal with prejudice. And they did deal with prejudice on the jury instruction issue. And they said, even if there was deficient performance here in terms of the jury instruction, the introduction of the prior convictions, that can't overcome the strength of the evidence in this case from the victim's identification, the immediate and persistent, unwavering identification of the defendant from the victim. The Michigan Court of Appeals said that on direct appeal. And so even if the claim had been presented just as Mr. Hewitt L. wishes it had on direct appeal, there's really no reason to say, there's no indication in the record, that the Michigan Court of Appeals would have decided the prejudice issue any differently. Because it would have been the same analysis. It would have been the same question. Whether the admission of the prior convictions as compared to the rest of the evidence was sufficient to overcome that prejudice. And that analysis would have been the same. And so for those... But on the other hand, it's a case, zero physical evidence, it's a pure credibility contest between Hewitt L. and Lemon. And I mean, just to hit one guy's word against the other, and by the way, my guy's got five armed robbery convictions. In a case where the charge is, you were present at an armed robbery. I mean, obviously we deal with this in 404B's, but I mean, can we conclude at some point that the prejudice is so great that the trial is just, you know, it's cooked by that point? I think if it was a direct appeal federal criminal conviction for this court, or on direct appeal in the Michigan Court of Appeals, that might be true. It might be the case. But the problem here is habeas, right? And so even if that could get past the procedural default, let's say that conclusion meets the prejudice standard for ineffective assistance of appellate counsel, there's still EDPA to contend with, and there's still a final Michigan Court of Appeals decision. No, I mean, that's your best argument, and that's something we all take seriously. I just wonder, you know, if a case where there's no physical evidence, it's a credibility contest, and you have five priors of the same charge that's being made, and the guy himself introduces it and brings it up about six or seven times, and the prosecution emphasizes it in closing. She says, out of his own mouth, he admits he did this same offense five times. If that doesn't meet EDPA, I wonder if this kind of claim could ever satisfy EDPA in any case. So I think it's not a question of whether it could ever satisfy EDPA. Can I introduce an idea here for you and for the opposing counsel on this point? What if when you were doing the EDPA gauging, which is, you know, it's not scientific, the thing that seems strange to me, like I quite agree with the performance point, I quite agree there seems to be a lot of prejudice here, and I think on direct review it would suffice. What seems a little odd to me in an EDPA setting is how preposterous his alibi is. There's no competing theory. From my perspective, and I want to hear from opposing counsel, I do not understand the competing theory. And so that's what strikes me as answering the question whether you can ever satisfy EDPA. I think the setting where you satisfy EDPA is where you've got a pretty good argument that it was this other guy. And the argument that Terry did it is really hard for me to understand how that works and that Lemon was motivated to set this whole Terry theory up as he's, you know, bleeding and dealing with just having, you know, been assaulted. That seems really strange to me. So I do think it's fair to look at both sides of the case. Let me ask you a question as you've sort of gone over to alibi now. Because in your brief, you at least briefly make the point is he admits that he was alone, so it couldn't be an alibi. But isn't the problem with that, and correct me if I understand the timeline here, is at some point Lemon talks about it being at 12 or so, but basically he ends up at 1.30. And Hugh et al.'s point or his statement is these calls about the Vicodin take place at 12, 12.30, and he was alone then, and then these other folks, McLean and his son, come in and do the car radios. So I don't see anything, you know, that fatally undercuts the alibi theory once you take Lemon's timeline, which is his timeline at the end, as 1.30. Am I missing something? If you take 1.30, the alibi theory is sound if the people will testify to that. What have I missed? So, Your Honor, I think there are a few points there. The first is the victim first reported to the police that the crime happened at, I believe, he said a specific time of 12.35, or even if you take around 12.30. And then it's true he testified that it was at 1.30 that it occurred, but frankly, it seems like the... Pardon? It's his under oath version. Yes, that is true, Your Honor. But there's also evidence presented at the trial, objective evidence, it's not just memory, it's objective evidence that the evidence technician arrived at 1.40 p.m. So if the victim's accurate, if his memory is accurate about the time, that would require the police, and not just the police in general, but the evidence technician to have arrived within 10 minutes of the victim being shot, going to several neighbors' houses because at least the first he tried didn't answer the door, called the police for the police to arrive, the initial responding officer, then a sergeant, and then that sergeant calls the evidence tech who arrives at 1.40. That seems unlikely, and I think that's part of the reason, you know, the jury heard all of this information. The jury heard that he testified it happened at 1.30, but they also heard the evidence technician testify that, and saw a picture from the evidence technician that he arrived at 1.40. But then it's not important at the trial if he doesn't have, you know, witnesses who are bringing in the alternate time frame, right? I think that's right. I do see my time is up, Your Honor, if I may answer your question. The other part of that that I was going to point out is Mr. Hewitt-Allen testifying at trial, he never identified any, he never said later in the day, oh, you know, these people came over. He never said, well, sure, at 12 o'clock or whatever, I was cooking my dinner for my fiance, and then just after that, right around that time, my son came over and Mr. McCline came over. Cross never asked him that, and, you know, he said Cross told him, don't say anything beyond what you're asked. Well, and so the specific question there was, Cross had asked him, was there someone else there with you? He said, no, nobody else was in my home. We stayed together, referring to his fiance. It seems that sort of the natural addition to that answer would be, at that time, I was home alone, but very shortly thereafter, these other people arrived. I think the other problem with the alibi here is his son, Leon Hewitt, never said that he saw someone else arrive at supposedly the same time when Mr. McCline and the son are both present. McCline says he saw the son, but the son never says he saw McCline. And so there are some serious credibility issues with the alibi. So even if those alibi witnesses... I mean, what reason did McCline have to make anything up? I suppose we don't know, Your Honor. I mean, so on the record, apparently none. And he says that's where he sees Leon there, as he's leaving. I mean, you know, I read the testimony. It doesn't sound far-fetched in the slightest, what he's saying. Whether Cross knew about him is another matter. Sure, sure. Anyway, I'm... No, that's all right, Your Honor. I do see my time is up. You'll get rebuttal, so thank you. Absolutely. Thank you, Your Honor. For Mr. Monahan. Good morning, Your Honors. Matt Monahan from the State Appellate Defender Office on behalf of Mr. Huedel. May it please this Court, this is a case about woefully inadequate representation on trial and appeal. And I'd like to jump to the prejudice from trial counsel's errors. Speaking to that counter-theory idea, not only is this not a preposterous alibi, but it's exactly the type... The theory, I just want to make sure I... There were kind of different theories. Yes. So let's focus on the one that it was all about Tarry and fingering Tarry. I think that the way the first day... How would you... How would Lemon think that at that point? That just doesn't make any sense to me. We don't have a great sense of this case because we don't have any adversarial testing. And so we're left with what looks like Mr. Huedel on the stand thinking about, well, why is this happening? That's essentially the question his counsel has asked him. But we don't have any investigation into these people. We don't even find Tarry. Well, let me frame the question this way. Okay. The way I see it is the hardest part of the case for you is the prejudice on the admission of the prior felonies. That strikes me as hard. Performance is not at issue. So talking about other performance issues isn't going to help me much. But let me acknowledge one thing that helps you, which is it's not obvious to me to win a prejudice EDPA case, you have to have this compelling alibi. You can still make the argument. It's still beyond a reasonable doubt. A jury would not have found it beyond a reasonable doubt, good or bad alibi. So I want to acknowledge that. But I do think it has a common-sense feature to it that juries do want to know who did it, if not this fellow. That strikes me as the way most jurors behave. And I just don't understand how this main theory of Tarry makes any sense, truly, any sense. I think it makes more sense if the jury hears evidence that Mr. Huodel is across town installing radios at the relevant time frame, which I know counsel's mentioned the evidence technician, but there's no discussion at trial about the time gap between first arrival and evidence tech arrival. If the theory of the defense is not just sort of a general denial, I wasn't there, it was someone else, it was I wasn't there, I wasn't even in this neighborhood at the relevant time frame. On top of that, Mr. Lemon can't get his facts straight. That this unwavering and consistent identification suffers from basic factual discrepancies from when he talks to the police. Yeah, the hour disparity. There's the hour disparity, but there's also the initial officer, there's no mention of cash. There's no mention of an armed robbery because there's no exchange of money, and that's why initially this case isn't even charged as an armed robbery. It's not until he speaks to Mr. Lemon at the hospital, speaks to the second officer, where there's the addition of the 600 in my pockets I gave to these individuals. Doesn't that kind of add up if you're a drug dealer? You don't want to talk about the money? You become a suspect. But it still speaks to Mr. Lemon's credibility in a credibility contest, that the story he tells keeps changing, and by the time he gets under oath, it's at a different time with a different scenario than what he tells the responding officer. His alibi is the explanation why he didn't do it. His explanation of who did do it is what appears totally nonsensical on the record. This idea, as Chief Judge Sutton points out, as the crime's happening... I think that sort of speaks... I think that's why I want to take that back to deficient performance. We're left on the record with this nonsense. Just remind me, forgive me for... I'm sorry, just orient me. Is the deficient performance one, though, that has that per review in it? We have a ruling that we have to defer to on that performance issue. On the alibi claim. Yes, we do. So we... Well, speaking to that in a moment, if I could, Judge, but the reason we're left with this, I think, this strange speculation about who and why is because there's no adversarial testing of the state's case. This goes to trial two months after prelim. There's no pretrial motion practice. There's no investigation of the eyewitnesses identified in the police report. There's no attempt to even contact Mark McCline who, in the months after, speaks with Sheila Jackson. Well, that's an important point. Yes. And, I mean, McCline is the most impartial and probably the most thorough and credible alibi witness. Yes. If he testifies, this is a very, very different case. Yes. But how, I mean, how exactly do we say that Cross was ineffective as to McCline because at the post-conviction hearing in front of Judge Murrow or Burrow... Yes. I mean, yes, Hewitt L. says that he told Cross and Russ about McCline, but each of them... each of them testify in a manner that, you know, that they didn't hear about McCline. They say, I heard about A, B, and C, none of whom are McCline. So, I mean, how do we tag them with knowledge of McCline when only Hewitt L. said, I told them about McCline and the Michigan Court of Appeals acted like that testimony didn't exist? Two ways to tag Cross with McCline. One is going back to day one of trial when Mr. Hewitt L. first alerts the court to this breakdown and the lack of investigation of the alibi. What Mr. Cross says on that day is, I am aware of other witnesses, but they need to contact me. A position that he takes almost identically to the post-conviction hearing years later. I think the fair inference from that, especially given what Sheila Jackson and Mark McCline talk about... Mark McCline's testimony... By aware of witnesses, you mean the knowing just the first name or aware of witnesses where you actually know exactly who the person is? I think all of these names are relevant at that point. What Mr. Cross is saying is, I am aware of others, but it's just not counsel's duty... Well, counsel's got this duty to investigate and you don't get to just voice that off onto family or Mr. Hewitt L. I think the other way to attach McCline to Cross is through McCline's testimony. I think it's roughly page... Not roughly. It's page 804 to 807, page ID in the record below. He speaks to his conversations with Sheila Jackson. I think there's two parts of it that strike me as persuasive. One, he says he sort of gets frustrated with her. She keeps calling and I think at one point, excuse the language, he calls it sort of a woman problem. He finds it just stressful and he passes it off to his wife. That struck me as an honest admission that he just didn't want to deal with this. And the other side of it is he's sort of trying to piece out what is this that we're talking about? Time frame, schedule? I know where I was roughly at that time based on this 2 p.m. event with his wife. That's the marker for Mark McCline. It's not anything to do with Mr. Cross or Mr. Hewitt L. He doesn't even seem to care all that much for Hewitt L. But how do we trace this back to Cross? Cross should have gotten McCline from Jackson. From Sheila Jackson. And I think what else suggests that Cross never dug in with Sheila Jackson is if he doesn't have the basic facts right. If Mr. Cross doesn't know this hour discrepancy and he can't plot the alibi on the time frame right, he can't ask Sheila Jackson the right questions. How does he get the answers he needs out of Sheila Jackson if he doesn't know the basic facts of the state's case? So that's where I think you get to a serious deficient performance problem with Mr. Cross' investigation on the alibi, but also rolling right into prejudice because what you hear out of Mark McCline at that post-conviction hearing put before a jury is persuasive. He's a Jefferson and Van Dyke roughly, which is the other side of that. Do you know of a case where on prejudice in an OEDPA setting, the criminal defendant prevails without a plausible alibi? In other words, I mean, because I can certainly see it happening. I just don't know of a case. And this is a totally unfair question. So if you think about this... I've been thinking about this for about a year. Well, if you think about this in the next couple of days and there's a case out there, either you've said it or you haven't, serve it on opposing counsel and let us know. I'd be really interested. I mean, I think it's quite... I'm not saying it can't happen. It can easily happen because you would just say, it's so prejudicial, I don't care. There's no alibi. It shows that a jury would have found not beyond a reasonable doubt, but it would be helpful to me anyway. It would be helpful. And I've tried to find. I will continue. An alibi's different. It is. And if you didn't do it, it's different than an explanation of why someone else did. And the latter, I mean, the alibi is he's at home. The explanation about Terry is what just seems utterly nonsensical on the record. And he just gets roasted on it. He does get roasted. I think that goes back to Cross. Well, if I can't believe him on that, why am I supposed to believe everything else? I don't know this. Why would a jury believe everything else? I think this again speaks to Cross's just woefully inadequate approach here. He is just sort of serving his client up. He's asking him a question that he doesn't know the answer to, and he's done nothing to investigate to figure this out. And, yeah, I think that that sort of rolls into the general theme of what that direct was. Well, I'm not going to blame the lawyer for the client's testimony. I mean, he's under oath. He is under oath, and I'm not trying to suggest that this is... He's being asked to speculate about an event at which he was not present. Right. That's the problem here. And I think his best... You know, he should just shut up because he doesn't know what he's talking about, at least on your theory of the case. I think that's one answer. Another answer is he says that he hears from Craig or... But we have to assume in this prejudicing query he testifies, right? We don't imagine him getting the good advice, hew it out. Yes. I think this is sort of like Ramones... It sounds like he probably shouldn't have testified, at least there's a lot to be said for that given what he did say. But we have to assume he did testify. I don't know that... You have to assume that he would testify should counsel have done the investigation to present the alibi witnesses. I think that that is part of the strategy call that you can't really rely on given the rotten foundation here, the failure to investigate and the failure to get the facts straight. Had Mark McCline come in and said what he said at the post-conviction hearing, it may be Mr. Hewitt never testifies at all. You know, on the default issue for the alibi stuff, I mean, the Michigan Court of Appeals, you know, they have this 608, 6-whatever rule, and we had an en banc case saying it's got a substantive part and a procedural part, and ironically the Michigan courts reached the substantive part first, right? Here, the D3 analysis in the Hewitt-Ells case? Yeah, I mean, well, it's like, are you entitled to relief? Or, like, was there a mistake or something? And then, was there prejudice? You know, would you have been acquitted absent the mistake, right? And so they reached the first prong. They actually reached both prongs, right, as to the alibi witnesses here? As to the alibi witnesses, no. Just the first prong, that's right. And so the second prong is actually procedural, ironically enough. The actual prejudice one. Substantial equity. And so, I mean, are you, I'm just trying to understand what you're arguing in the blue brief, because, I mean, this is an insanely complicated procedural default question on this claim. Yes. Are you, I mean, are you arguing just straight up that, hey, you know, in the second Michigan, in the final Michigan Court of Appeals decision, where they reach this rule, they reach the first part of it, and say you're not entitled to relief on this claim, are you saying that's a ruling on the merits and, ergo, not defaulted, period? Or is it more complicated than that? Slightly more complicated. But I, the end point here is there's no default on that alibi claim because you have a merits ruling with respect to deficient performance in the final Michigan Court of Appeals opinion. Okay, so what's the complication? I think the complication is there's no discussion of prejudice with respect to that claim in the Michigan Court of Appeals opinion. They jump, well, I should say it's... That's unusual. I mean, a lot of times... It's ambiguous. A state court will say no deficient performance and they're not going to go on to prejudice. Right. A lot of times. I think that, I wanted to present one path through the procedural default case law, which is that this is sort of a blend of the federal law of Strickland and the state procedural rule, which makes it hard to say there's a clear and unambiguous reliance on the procedural rule. In the alternative, I think this is the case where, as you discussed, there's the ruling on deficient performance and that gets you past procedural default here with respect to both prongs. That's possible. But even so, no fair-minded jurist could agree with the way the Michigan Court of Appeals treats prejudice here. The idea that this is a strong case, I think, is the anchor for their prejudice. And I don't want to concede that I think they've done a blended prejudice analysis with respect to both claims. I say that... I don't know what that is. Okay, I should say... Sorry, I read your brief. I got it. Okay. I think that the key for the prejudice analysis here is that if this is an unwavering and consistent identification, then you need the alibi witness. You need Mark McLean. You need to have investigated that. On top of that, you have no business to soften this blow that was never coming with these prior convictions. And even if you're testifying, it doesn't tilt the scales enough. This is so prejudicial. Even the Michigan Court of Appeals says so in finding deficient performance. This is highly prejudicial. No fair-minded jurist could say it's highly prejudicial so you performed efficiently, but then not mention that. If we rule for you, do you not think this will be an incredibly consequential AEDPA decision every time a prior offense is admitted? And people in retrospect agree it was a performance problem, which I'm inclined to think they will. I mean, it just strikes me as a... It almost seems like the effective performance would be you've got a bad hand here. Let that stuff in. Because you're going to lose anyway at this point. But this is buried in the case and you'll always get out of whatever the state courts do. No, Your Honor. This is distinct. This is... Because of the number of felonies? Because of his great alibi? Because of the total lack of investigation. I know. You keep going back to investigation. I do. And it makes me start to worry that you can't win without winning on that claim, which is not what I thought. I thought the case, to me, was the prejudice inquiry is very difficult. That's the way the case came to me. It seemed outrageous to let this stuff in and it seemed like a very close AEDPA call on the prejudice. And I've got to say, I wasn't quite as wowed on the investigation front. But maybe I'm wrong about that. May I address that? Yeah, no. Yeah, no. I think... You get the last word. You tell a jury that your client has done this five times before, but ask them to say, he didn't do it this time. There's no way out of that. There's no way out of that. All right. That's the prejudice. And I think that this is such a distinct, factual case. It's not, you know, the sort of overturning of the state court's, you know, process. With that, we'd ask you to affirm the district court. All right. Thank you, Mr. Monahan. Okay, so Mr. Shimkus, do you have... Yes, Your Honor. I would just like to make two relatively brief points on... I think, Judge Sutton, you had pointed this out. There's a lot of focus on performance here. And I think it's easy for the petitioner to lean on performance, right? Because there are many things that you can talk about as far as the performance goes. But they still have to get around prejudice. And Your Honor is absolutely right that prejudice is a problem here. But even if prejudice could maybe, maybe have been satisfying on direct appeal, this is an entirely different context in which this court has to analyze these issues because of AEDPA. And there's really no question here that AEDPA is applicable. We all know the standard very well. Absolutely. I do think it bears repeating. And the other thing, Chief Judge Sutton, you had pointed out in terms of sort of what we have to assume for the trial that Mr. Hubigel would have testified and been consistent. I think that's fair. But you could imagine a world in which someone says part of the prejudice is once those felonies come in, it puts a lot of stress on the case. The stress on the case leads to fantastic alibi stories. Am I allowed to think that or worry about that? But in other words, it was preposterous, and that's very hurtful to showing prejudice because anyone that looked at that straight up would say, well, he's lying about that. He's probably lying about everything else. But the only reason he was doing that was because of all these felonies coming in. He was backed up against the wall. That's possible, Your Honor. But the question under Strickland for the prejudice analysis is, you know, Strickland instructs to look at the totality of the evidence. So that's whatever evidence was presented at the trial plus whatever evidence is proposed now. So that would be the alibi witnesses. And so you still have to assume that everything Mr. Hewitt-Ell said at the trial, he is still present on the record, and then you have to take all of that information and look at it and add these alibi witnesses. So you still have the problems of Mr. Hewitt-Ell saying, you know, he was alone for certain times. He doesn't mention these witnesses. You know, he tries to claim that this was manufactured because of this, you know, relationship. So just maybe finish up. Absolutely, Your Honor. The only thing I'll say is that just for all these reasons, you know, we ask you to reverse primarily on the prejudice point under it. Okay. Thank you. Thanks to both of you for your helpful briefs and as always for answering our questions, which we always appreciate. So thanks so much. The case will be submitted and the clerk may call the next case.